# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:16-cv-03349-M |
| PAMELA R. HIEB and MARK D. DANIELS | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Mark D. Daniels' Motion to Dismiss Crossclaim Pursuant to Rule 12(b)(6); or, in the alternative, Motion to Strike Pursuant to Rule 12(f) and Motion for More Definite Statement Pursuant to Rule 12(e). (ECF No. 18). For the reasons stated below, the Motion to Dismiss is **GRANTED**, so the alternative motions are moot.

Also before the Court is Defendant Pamela R. Hieb's Motion for Leave to Amend Crossclaim. (ECF No. 25). For the reasons stated below, the Motion for Leave is **GRANTED**.

## I. Factual and Procedural Background

Pamela Hieb and Eugene Knies were married in 1990. (Crossclaim ¶ 79, ECF No. 9). Knies and Mark Daniels later became business partners, and each purchased insurance policies that insured the life of the other. (*Id.* ¶ 80). Two of those insured the life of Knies for a total of $2 million, and Daniels was the owner and beneficiary of both policies ("Disputed Policies"). (*Id.* ¶¶ 80-81). Sun Life Assurance Company of Canada ("Sun Life") issued the policies. (*Id.* ¶ 80).

In 2011, Hieb filed for divorce from Knies. (Crossclaim ¶ 82). While the divorce was pending, Daniels and Knies terminated their business relationship. (*Id.* ¶ 84). They also agreed

1

to exchange certain of their insurance policies. (*Id.* ¶ 85). Daniels transferred his ownership interest in the Disputed Policies to Knies, but still remained as the beneficiary, allegedly based on a promise by Daniels to Knies to provide for Knies' children. (*Id.*)

On October 7, 2016, the divorce court held that Knies was "divested of all right, title, interest, and claim in or to" the Disputed Policies, awarding them to Hieb as her "sole and separate property." (Crossclaim ¶¶ 90, 93-94). On October 31, 2016, Hieb asked Sun Life to designate her as the owner of the Disputed Policies. (*Id.* ¶¶ 35-40). Later that day, Knies died. (*Id.* ¶ 40). On November 1, 2016, Hieb asked Sun Life to designate her as the beneficiary of the Disputed Policies. (*Id.* ¶ 41).

Sun Life filed this interpleader action because Hieb and Daniels each claim to be the sole beneficiary of the Disputed Policies. Hieb then filed a crossclaim against Daniels for conspiracy to commit fraud. (Crossclaim ¶ 104; Hieb Resp. at 2, ECF No. 24). She alleges that Knies and Daniels conspired to prevent her from becoming the beneficiary of the Disputed Policies. (*Id.* ¶¶ 98, 103). Daniels moves to dismiss the crossclaim under Rule 12(b)(6). Hieb moves for leave to amend in the event that the Court grants the motion to dismiss the crossclaim.

## II. Motion to Dismiss Pursuant to Rule 12(b)(6)

### a. Legal Standard

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.

*Twombly,* 550 U.S. at 570. The court must accept all of the plaintiff's factual allegations as true, but it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Id.* at 555. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief. *Iqbal*, 556 U.S. at 678.

Parties alleging fraud must meet a heightened pleading standard. They must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Articulating the elements of fraud with particularity "requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citation omitted). In allegations of conspiracy to commit fraud, plaintiff must plead with particularity both the conspiracy as well as the overt acts taken in furtherance of the conspiracy. *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (citation omitted).

### b. Analysis

#### i. Whether *Chu v. Hong* Bars Hieb's Crossclaim

As a threshold matter, Daniels argues that the crossclaim fails as a matter of law under *Chu v. Hong*, 249 S.W.3d 441 (Tex. 2008). In *Chu*, a husband sold community property and gave the sales proceeds to his parents. *Id.* at 443. He then filed for divorce. *Id.* The wife sued her husband, for defrauding the community estate, and her husband's attorney, for conspiring with him to defraud her. *Id.* The court held that the husband was not liable because "there is no independent tort for wrongful disposition by a spouse of community assets." *Id.* at 444 (citing *Schlueter v. Schlueter*, 975 S.W.2d 584, 585-86 (Tex. 1998)). Instead, the "sole method" for

3

adjudicating such a claim is when the court accounts for it in the division of community property upon divorce. *Id.* at 445 (citing *Schlueter*, 975 S.W.2d at 585-86)). Because the husband could not be held liable in tort, the court held that the attorney similarly could not be held liable for conspiring to commit a tort. *Id.* at 447.

Hieb alleges that Knies fraudulently disposed of community property (i.e., the policies insuring the life of Daniels) and that Daniels conspired with Knies to prevent her "from receiving her due share of the community estate." (Crossclaim ¶¶ 85-86). This alleged fraud was specifically taken into account during the division of community property by the divorce court. (*Id.* ¶ 91 ("The Court finds that, during the marriage, [Knies] committed waste, construct fraud and breach of fiduciary duty with respect to community assets . . . . The Court finds that [Hieb] should be awarded a disproportionate share of the community estate.")). Under *Chu*, Hieb has no independent tort claim against Knies for fraud associated with transferring the insurance policies nor against Daniels for conspiring with Knies to do so.

*Chu* does not foreclose Hieb's crossclaim, however, to the extent it is grounded in fraud unrelated to the disposition of community property. Indeed, Hieb also alleges that Daniels and Knies conspired to prevent her from becoming the beneficiary of the Disputed Policies after she was awarded them as her separate property. (*See, e.g.*, Crossclaim ¶ 98 ("[Daniels] promised to provide the information that [Hieb] needed to [become the beneficiary], but then he deliberately slow-played his assistance and, by skillfully stringing Hieb along, Daniels actually delayed Hieb's efforts by several days.")). Daniels could be held liable for conspiracy to commit fraud in this respect. The Court therefore tests the sufficiency of allegations regarding Daniels' efforts to prevent Hieb from becoming the beneficiary of the Disputed Policies.

### ii. Whether Hieb Fails to State a Claim Under Rule 12(b)(6)

4

Hieb has failed to state a claim for conspiracy to commit fraud. Conspiracy is a "derivative tort," contingent on defendant's participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *See Carlton v. Fearneyhough*, 2008 WL 686595, at *5 (5th Cir. Mar. 12, 2008) (citing *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996)). Hieb is suing Daniels only for conspiracy to commit fraud, not fraud. (Hieb Resp. at 2). Because Hieb does not allege fraud against Daniels, he cannot be held liable for a conspiracy to commit fraud. *See Allstate Ins. Co. v. Receivable Finance, Inc.*, 501 F.3d 398, 414 (5th Cir. 2007); *Murex, LLC v. GRC Fuels, Inc.*, 2016 WL 4207994, at *9 (N.D. Tex. Aug. 10, 2016).

Also, Hieb's allegations do not state a claim against Daniels for fraud. In Texas, fraud can be based on a false representation or nondisclosure. For fraud based on a false representation, Hieb must allege that Daniels made "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (quoting *Johnson & Johnson Med., Inc. v. Sanchez,* 924 S.W.2d 925, 929–30 (Tex. 1996)). The only allegations regarding any representation made by Daniels are that he "feigned willingness to assist Hieb" and promised to provide her information necessary to obtain the benefits of the Disputed Policies awarded to her. (Crossclaim ¶ 98). Hieb does not provide details on the particular statements contended to be fraudulent, nor when and where the statements were made, nor how the statements were fraudulent, as required by Rule 9(b). Intent to defraud, however, "may be averred generally" under Rule 9(b), and the Court notes that Hieb sets forth specific facts supporting an inference of fraudulent intent, such as Daniels "feign[ing] willingness" to help,

5

"slow-play[ing] his assistance," and "skillfully stringing Hieb along." (Crossclaim ¶¶ 98, 100); *see also Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

For fraud based on nondisclosure, Hieb would have to allege that Daniels "concealed or failed to disclose a material fact that [he] knew [Hieb] was ignorant of or did not have the opportunity to discover, that [he] intended to induce [her] to take some action by concealing or failing to disclose the material fact, and that [she] suffered as a result of acting on [his] nondisclosure." *Dorsey*, 540 F.3d at 341 (quoting *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001)). However, "for there to be actionable nondisclosure fraud, there must be a duty to disclose." *Id.* (citation omitted). Hieb must plead with particularity facts that give rise to a duty to disclose the information. *Magruder v. Halliburton Co.*, 2009 WL 854656, at *4 (N.D. Tex. Mar. 31, 2009). Hieb does not allege that Daniels had a duty to disclose information, let alone with particularity, nor does she identify what information he should have disclosed to Hieb.

Finally, for conspiracy, Hieb must allege "(1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means) (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998). In particular, "meeting of the minds" requires specific intent; the parties must be aware of the wrongful nature of their conduct when they form their plan to act and must intend to participate in the purpose of the conspiracy. *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). Hieb fails to specify precisely what Knies and Daniels agreed to and when they agreed to it, as required by Rule 9(b). *See Murex*, 2016 WL 4207994, at *10. She does not allege any overt, unlawful acts in furtherance of a conspiracy, let alone with particularity.[1] The

---

[1] Hieb argues that the overt, unlawful act is Knies and Daniels exchanging insurance policies during the divorce proceedings. As discussed previously, wrongful disposition of community property is not

6

Court, however, notes that Hieb's allegations do support an inference of "meeting of the minds" between Knies and Daniels, given the asymmetry of their exchange of insurance policies, the timing of the exchange, and the descriptions of Daniels' subsequent conduct. (Crossclaim ¶¶ 84-85, 98).

### III. Motion for Leave to Amend Crossclaim under Rule 15(a)

#### a. Legal Standard

Hieb moves for leave to amend her crossclaim in the event that the Court grants the Motion to Dismiss. Rule 15(a)[2] provides that "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P 15(a); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."). Leave to amend should not be denied unless there is a substantial reason to do so. *See Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998). Substantial reasons include "undue delay, bad faith, dilatory motive on the part of the movant, or undue prejudice to the non-movant." *Cover Four, L.L.C. v. Cardiac Sci. Corp.*, 2007 WL 4245486, at *1 (N.D. Tex. Dec. 3, 2007).

#### b. Analysis

---

actionable against either Knies or Daniels. *See International Bankers Life Ins. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963) (Unlawful acts "consists of acts which would have been actionable against the conspirators individually."). She also argues that the relevant act is when "Daniels misled Hieb and took steps to hinder her efforts to become the beneficiary of the [Disputed Policies]." But, this by itself, is not unlawful. It may be unlawful if there was a false representation, but Hieb does not sufficiently allege that. *See Massey,* 652 S.W.2d at 934 (holding that plaintiff did not state a cause of action for civil conspiracy where none of the overt acts alleged were unlawful).

[2] Because Hieb sought leave to amend before the deadline set by the Court's Scheduling Order, the Court need not evaluate Hieb's Motion under Rule 16(b). *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003).

There are no apparent substantial reasons to deny leave to amend, and the Court concludes that the motion should be granted. Nothing in the record suggests bad faith or a dilatory motive on Hieb's part. Allowing Hieb to amend would not materially prejudice Daniels, as trial is more than six months away and discovery could be extended to cure any prejudice. Indeed, courts typically grant leave to amend "unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corporation*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).

In her Motion, Hieb proposes to make specific changes to her crossclaim in addition to issues raised by the Court. The Court notes that the proposed amendment does not address all of the defects identified in this Order. For example, the amendment still only alleges conspiracy to commit fraud against Daniels. Hieb must further amend her crossclaim to satisfy this Order.

## IV. Conclusion

For the reasons stated above, Daniels' Motion to Dismiss is **GRANTED**. Hieb's Motion for Leave to Amend is also **GRANTED**. Hieb has leave to file an amended crossclaim within three weeks of this Order.

**SO ORDERED.**

November 21, 2017.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**